WINDSOR,
June,
1841.

THOMAS EMERSON *v.* BANI UDALL.

*(In Chancery.)*

A court of equity will not enjoin the party from pursuing a judgment at law, upon any ground which afforded a good defence at law, unless the orator was prevented from presenting his defence at law, by accident or mistake, without his own fault, or by the fraud of the opposite party.

The ground upon which courts of equity interfere, in such cases, must be such as are exclusively within their own cognizance.

In the case of awards, corruption or partiality in the arbitrators, or fraud in the party prevailing, affords good grounds, in a court of equity, for setting aside the award.

But fraud in the party, in obtaining the allowance of groundless claims, must, at the least, proceed from consciousness and deliberate purpose, not only in presenting a claim which the party believes to be groundless, but upon a factitious state of facts, either by suggesting falsehood or suppressing truth.

THIS was an appeal from the decision of the court of chancery, dismissing the orator's bill.

The orator, in his bill, among other things, alleged, that in the year A. D. 1829, there was an action pending in the county court within and for the county of Windsor, in favor of the orator and Eleazer Davis, of Hartford, in said county, of the latter of whom Wm. Strong, of said Hartford, was guardian, founded on certain notes against the defendant, in which action the orator and said Davis recovered a judgment against the defendant, Udall, by default, for $180.32 damages, and $6.33 costs, on which judgment there was still due and unpaid the sum of $116.47 and interest; that, on the first day of December, A. D. 1831, the said Davis died, and the orator, as survivor of said Davis, afterwards, brought a suit upon said judgment against the defendant, Udall, made returnable to the November term of said Windsor county court, A. D. 1834, at which term the defendant appeared and filed a plea in offset upon the following award of arbitrators, viz :—

' Whereas some dispute arose between Messrs. Emerson
' & Davis, (Strong, guardian of said Davis,) and Bani Udall,
' respecting some claims which the said Bani Udall conten-
' ded should be filed in offset in the suit of Emerson & Da
' vis *v.* Bani Udall and whereas it was agreed by and be-

WINDSOR,
June,
1841.

Emerson
v.
Udall.

' tween the said parties, that judgment should go by default ' against the said Udall, and that we, the undersigners, ' should examine and adjust said claims, and that the amount ' we should allow in favor of said Udall, on said examina-' tion, should be applied and indorsed on said judgment: ' Therefore, be it known, that we have attended to the said ' business, and have decided, and do hereby decide and ad-' judge, that the sum of seventy-seven dollars and seventy-' three cents, which includes interest up to June, 1829, be ' allowed in favor of said Udall, being the amount received ' by the hand of George E. Wales, which was not indorsed ' on notes against said Udall, nor accounted for in any other ' way ; also the further sum of thirty-eight dollars and sev-' enty-four cents, being the amount of an order, drawn by ' Emerson & Davis on Hyde Clark, for one hundred and ' eight bushels of oats, and the interest on the same. The ' interest was cast up to June, 1829. We do decide and ' adjudge that both said sums, amounting to one hundred ' and sixteen dollars and forty-seven cents, shall be allowed ' in favor of said Udall, and that sum shall be applied on said ' judgment, or the execution issued thereon.

' Hartford, Nov. 23, 1830.' Which award was signed by WYLLYS LYMAN and H. F. LEAVITT, arbitrators.

The orator further alleged that issue was joined upon said plea in offset, and a trial had thereon in said court, when the whole matter litigated was the validity of said award, under the circumstances in which it was obtained by the defendant, the debt sued for being admitted to be due unless balanced by said offset ; that the jury returned a verdict in favor of the defendant, and the orator, took exceptions to the decision and judgment of the county court ; (this bill was filed previously to the session of the supreme court,when the exceptions were entered in that court ;) that the defendant imposed upon the arbitrators previous to their session, by falsely representing to them that your orator alone had any concern in the matter, and was the only person to be notified, when the defendant well knew, as the truth was, that the said Strong, as guardian of said Davis, had the whole care and management of said first mentioned judgment, and the executions which issued thereon, and in further falsely representing that there could be no dispute about the

defendant's claims to be submitted to them for adjudication, and procured the said arbitrators to examine said claims and make an award thereon without giving any notice thereof to said Strong, as guardian of said Davis, and without any other notice to the orator than a letter from Leavitt, one of the arbitrators, which arrived at Windsor, the residence of the orator, at eight o'clock in the morning of the day on which the hearing was to be had at Hartford, the place of hearing being fourteen miles distant from said Windsor; that when the orator received said letter, he was about starting for Boston, agreeably to a previous appointment; that said Strong resided in said Hartford, but four miles distant from the place of hearing before the arbitrators, and presuming that Strong had notice and would attend before the arbitrators, and as the orator could not delay his journey to Boston, he neither attended himself, nor procured any one else to attend in his behalf; that the defendant attended before said arbitrators, and, on an *exparte* hearing, fraudulently procured said arbitrators to make an award in his favor for said moneys collected by said Wales, mentioned in said award; that said claim for moneys was never known to either the orator, Davis, or Strong, and was never agreed to be submitted to said arbitrators; that all moneys that had, in any way, ever been received by the orator and Davis, of said Wales, as belonging to the defendant, had been fully accounted for with the defendant, which fact the defendant concealed from said arbitrators; that the other claim, being an order for oats, was wholly fraudulent and unjust, and that the defendant had, many years before, received the oats mentioned in said order, all which could have been fully shown had said Strong been notified to attend before said arbitrators, or if the orator had been earlier notified.

The orator further set forth that the defendant was admitted to testify before the arbitrators to establish his claims. And the orator prayed that said award might be decreed null and void, and that the defendant might be perpetually enjoined from prosecuting said award, either in support of his plea in offset, or in any other manner, and that the defendant might be decreed to pay the costs in said suit in favor of the orator against the defendant, and for further relief.

The defendant pleaded, in bar, that he did plead in offset to

the action in favor of the orator against the defendant, mentioned in the orator's bill, the award stated in and sought to be impeached by the bill; that issue was joined between the parties and a trial was had on the issue so joined, before a jury, at the May term of the county court, 1835; that, on that trial, the orator endeavored to impeach the award, and relied on the same objections to it which are stated in the bill, as the ground of relief, and offered evidence to substantiate each of said objections, and the jury returned a verdict for the defendant; that the orator then reviewed the cause, and, at the November term of said county court, 1835, the cause was again tried on the same issue; that, on this trial, all the same objections to the validity of the award were again urged, and proof again introduced to sustain them, and that the jury, after a full hearing, under the charge of the court, again returned a verdict for the defendant, and a judgment was thereupon rendered by said county court in favor of the defendant; that the orator took exceptions to the points ruled against him on the trial, and to the charge of the court, and, in his exceptions, brought in question all the points of law and equity now relied upon in the bill as grounds of relief; that said cause was heard, on said exceptions, in the supreme court, at the February term thereof, A. D. 1836; that, in the argument before the supreme court, all the same objections were urged and were all overruled, and the judgment of the county court was affirmed by said supreme court, with costs. And the defendant, in his plea, averred that said county and supreme courts had jurisdiction to hear, try, and finally determine the questions in said cause thus submitted to their decision.

The defendant answered so much of the bill as the plea did not profess to answer, and, in his answer admitted, among other things, that said Strong was not notified of the meeting of the arbitrators, and insisted that said Davis died long before any meeting of the said arbitrators, to wit, in October, 1829.

He admitted that neither the orator nor Strong attended before the arbitrators, but believed the orator had reasonable notice. He denied having done any thing to induce the arbitrators not to notify said Strong, or having, in any manner, advised or consulted the arbitrators relating to giving no-

WINDSOR,
February,
1841.

Emerson
v.
Udall.

tice to the parties, and alleged that he had no knowledge concerning the notice that was given to the orator, until the testimony relating thereto was given on the first trial in the county court. He further denied having made any false representations to said arbitrators, at any time, relating to the matters submitted by him to them, or that he concealed any fact from said arbitrators, within his knowledge, relating to the matters so submitted to them. He admitted that, at the suggestion of Lyman, one of the arbitrators, he was sworn to one fact only before said arbitrators, which fact was that the order for oats, drawn by Emerson & Davis on Hyde Clark, was given for a valuable consideration, paid by the defendant to said Emerson & Davis therefor, the order not having been drawn for value received. He denied that the money allowed to him by the arbitrators as having been received by Emerson & Davis of said Wales, had ever been in any way accounted for by them, or applied on any notes holden by them against the defendant, and further denied that he ever received any oats on said order, drawn on Hyde Clark, and he denied all fraud and insisted that said award was valid in law in equity.

The plea and answer were traversed and testimony was taken.

A copy of the record of the suit, wherein said award was pleaded in offset, was also filed as evidence, which record proved the facts set forth in said plea.

The testimony was voluminous, and, as will appear from the opinion of the court, not wholly satisfactory as to the justness of the defendant's orginal claims. The view taken by the court of the testimony sufficiently appears in their opinion.

*T. Hutchinson* argued for the orator, and cited 3 Har. Dig. 2282. 2 Cromp. & Mason, 347. 17 Johns. 405, 425. 6 Ves. 70. 1 Sw. Dig. 471, 2–3. 1 Con. R. 569. 2 Chit. Pr. 95, 96, 118, 120. 1 Atk. 63. 2 Day's R. 552. 1 Ch. Eq. Dig. 35, 36, citing 2 Ball & Beatty, 317. 2 Sch. & Lef. 486. 1 Saund. 327, a. note 3. 2 B & P. 388. 1 Stark. Ev. 2, 3, 4, 5, 6–7. Id. 406. Willes R. 206. 6 East, 11, 12. 2 Cond. R. 303. Id. 393. 5 Cranch,

WINDSOR,   274.   2 Cond. R. 373.   Id. 516.   1 Har. Ch. 183–4.
*June*,
1841.      1 Sumner's R. 89, 108.   8 Pick. R. 117.   1 B & P. 388.

Emerson
*v.*        *C. Marsh*, for defendant, contended that the matters
Udall.     both of fact and law stated in the bill, had been litigated
and finally decided by courts of competent jurisdiction, and
that their decisions could not be collaterally called in ques-
tion.   1 Stark. Ev. 198–9.   1 Pet. R. 340.   2 Id. 163.   1
Id. 202–3.   3 East, 346.   9 Ves. 64.   1 Stark. Ev. 192.
3 Wilson, 304.   17 Mass. 365.

He further contended that a judgment of a court of law, of
competent jurisdiction, was imperative upon all other courts
of law and chancery, and, *vice versa*, a decree of a court of
chancery of competent jurisdiction was alike imperative up-
on all courts of law as well as of chancery, and to this point,
he cited 5 Pet. R. 23.   5 Pet. Cond. R. 136.   1 J. C. R. 91.
7 J. C. R. 174–82, 286.   1 Pet. R. 202–3.   And he insisted
that unless fraud be proved, or a suppression of material
facts by the defendant, within his knowledge, thereby induc-
ing the arbitrators to make an unjust award in his favor, a
court of chancery would not set aside the award, and that
the testimony was wholly insufficient to fix either of these
charges upon the defendant.   1 Atk. 64, 77.   Kyd on Aw.
140.   8 Vt. R. 357.   Kyd on Aw. 239–40.   2 Pr. Wms.
426.   2 Ves. Jr. 335–6.

The opinion of the court was delivered by

REDFIELD, J.–The object of the present bill is to enjoin the
party from pursuing a judgment at law.   This judgment was
founded upon an award of arbitrators.   A trial was had, at
law, upon the merits of the award.

The grounds alleged in the bill for setting aside the award
and enjoining the judgment, are ;—

1. That the original claim, allowed by the arbitrators,
was wholly groundless.

2. That the arbitrators awarded upon matters not within
the scope of the submission.

3. That the orator had no sufficient notice of the time
and place of hearing before the arbitrators.

It is no doubt true, that there will be found in the books
some little contrariety in the principle of the cases decided,

in regard to the points involved in the present case. 1. How far the judgment of a court of law is liable to be overreached in a court of equity ; 2. Upon what grounds an award of arbitrators is impeachable, either in law or equity.

WINDSOR,
*February*,
1841.

Emerson
*v.*
Udall.

Upon the first point, notwithstanding some early cases to the contrary, it is now, I apprehend, well settled, that a court of equity will not examine into the foundation of the judgment of a court of law, upon any ground, which either *was tried, or might have been tried,* in the court of law. The judgment of a court of law is conclusive upon all the world, as to all matters within its cognizance. If a party fail there by not presenting his defence, when he should have done it, and, but for his own neglect, would have done it, he can have no redress in a court of equity ; much less can he expect relief in a court of equity, when he has had a full trial at law upon the very grounds which he now wishes to urge anew. For a court of equity to grant relief in any such case, would be but to sit as a court of errors, upon the proceedings of the courts of common law, which would be a very invidious, as well as a very unwarrantable assumption.

Equity has sometimes interfered to grant relief, when a party by accident or mistake, without his own default, or by the fraud of the opposite party, has failed of an opportunity to present his defence. So, too, when the ground of defence was exclusively of an equitable character, and such as would not avail the party at law. Beyond this, I know of no good ground upon which a court of equity could interfere to enjoin the party from pursuing a judgment at law. I am aware, however, that there may be found many cases, but not of a very high character for authority, which have gone somewhat beyond this.

In the present case there is no pretence, that the party did not have full opportunity to urge his defence in the court of law. The case was there fully tried, upon its merits, before the jury, questions of law reserved, and finally decided in this court.

The question, how far the matters passed upon by the arbitrators were within the submission, and how far the orator received legal and sufficient notice, were fully cognizable in a court of law. That was the proper tribunal, and the only

proper tribunal in which to urge any such defence. Those questions were there fully heard and determined against the orator. With that decision he must be content. *Bonner* v. *Liddell et al.*, 5 E. C .L. 20. *Bean* v. *Farnam et al.*, 6 Pick. 269. *Matter of Cargey and Aitchison*, 16 E. C. L. 80.

But partiality or corruption in the arbitrators, or fraud in the party in obtaining the award, are grounds of defence exclusively of equitable cognizance. *Wills* v. *Maccarmick*, 2 Wills .148. *Braddick* v. *Thompson*, 8 East. 344. In the English practice, I conclude, all arbitrations are made rules of court, and any irregularity in the proceedings is remedied by application to the court to set aside the award. This is more convenient than a resort to chancery, which the party must there do, if he delay until suit brought upon the award. *Swinford* v. *Burn*, 5 E. C. L. 438.

In the present case it is not alleged, in the bill, that the arbitrators were guilty of partiality or corruption. We have then nothing to do with any evidence or inference upon that point. The orator, if he prevail, can only do so upon such grounds as are alleged in his bill.

It only remains to consider how far the orator is entitled to relief, on the gronnd of fraud in the defendant, in obtaining an unjust award.

The kind of fraud, which it is necessary to prove upon a party prevailing before arbitrators, in order to justify a court of equity in setting aside the award, it is not important, perhaps, here to consider, beyond that which is proved in the present case. It is very certain, that the mere fact, that the party offered, and prevailed before the arbitrators upon, a groundless claim, is no ground of charging him with fraud. This he might have done with perfect innocence and sincerity. It is necessary something more should be shown. And I feel very confident, that the fact, that the party making the claim considered it one of doubtful equity, or even that he might honestly have believed that the claim was not well founded, either in law or equity, if all the facts known to him were fairly laid before the arbitrators, and they allowed the claim, is no such fraud as will justify a court of equity in interfering. The party must, either by suggestion of falsehood, or the suppression of truth, have presented to the arbitrators a state of facts in regard to the merits of the claim, which

were factitious, and which the party at the time believed to be such. And it is questionable even how far such a case will justify a court of equity in setting aside the award. Some cases of good authority seem to justify such a course. It is certain nothing short of this would justify it.

But, in the present case, there is no approach towards any such state of facts proved. It is even now doubtful how far the claims, for which the defendant obtained an award, were not well founded. It is, perhaps, probable some or all of them were not well founded. This, however, is now attempted to be made out by presumption and inference mainly, which, after such a lapse of time, is, to say the least, wholly unsatisfactory. Upon the question of the justness of the original claims, different members of the court entertain different opinions ; but all agree, that the case is merely doubtful upon that point. And there is no proof tending to show that the defendant did not present these claims to the arbitrators in perfect good faith, and upon the full state of the facts, as he believed them to exist. For a court of chancery to interfere to set aside the award, would be but to try the case upon its original merits, after such a lapse of time, and with appliances and opportunities far less fitted to ascertain the real facts in the case than were at the command of the arbitrators. The decree of the Chancellor, dismissing the orator's bill, is affirmed with costs.