ISRAEL CUTTING v. ORLANDO CARTER.

[IN CHANCERY.]

*Misconduct of arbitrators. Fraud in obtaining improper allowance.*

An award of arbitrators will not be set aside on account of discreditable misconduct in a hearing before them, if the misconduct of the arbitrators themselves was not intentional or very gross.

If a party to an arbitration fraudulently procures allowances in his own favor by withholding his books and papers, from an inspection of which, he is conscious, the incorrectness of the claim will be made apparent, it will be a sufficient ground for setting aside the award.

APPEAL FROM THE COURT OF CHANCERY.   The bill was brought to set aside an award of arbitrators, on account of their misconduct, and the fraud of the defendant in procuring improper allowances to be made by them in his favor.

Certain matters in difference existed between the complainant and the defendant, which by their agreement were submitted in writing to the arbitrament of George. A. Page, George Sumner and Cornelius Smith, before whom a hearing was had on the 28th of November, 1853, at which time they made an award in favor of the defendant for fifty-two dollars.   Among the matters submitted was a claim by the complainant for four barrels of flour delivered to the defendant between the 18th and the 27th of March, 1852.   The orator had charged, and he proved by one Tracy a delivery to the defendant of seven barrels of flour between those dates, and previous to the arbitration the defendant had, as the complainant alleged, denied receiving but three of them ; but at the arbitration, upon the complainant proving the delivery of seven barrels, the defendant presented his account, drawn off on a sheet of paper, in which there appeared a credit to the complainant of four barrels of flour on the 19th of March, 1852, and of three barrels on the 25th.   The four barrels credited under the date of the 19th of March were, as the orator alleged, delivered and credited on the defendant's book at a date prior to the 10th of March, and had no connection with that claimed for by him as a part of the seven barrels, the delivery of which he proved by Tracy ; and he insisted that this he should be able to show upon

inspection and examination of the defendant's book, but that neither the defendan t or the arbitrtors would allow him such an examination, though the books were present and examined by the arbitrators; and that the arbitrators refused to continue or delay the hearing to enable the complainant to send for a witness, who resided eight miles distant, by whom he could have proved the delivery of the four barrels credited by the defendant, at a time long before the 19th of March. In the account presented before the arbitrators by the defendant, and allowed, were two charges for fifty dollars each, one under date of August 10, 1851, for " cash for rent endorsed on lease," and the other under date of December 8, 1851, for " cash per Carter & Bliss on account." During this time the defendant held a lease from the complainant of a certain store in Cabot aforesaid, upon which fifty dollars of rent became due August 10th, which was receipted on the lease as paid under that date, and the defendant testified and claimed before the arbitrators, that he had paid this rent twice; once in August at the date of said receipt, and again in December, as appeared by a charge for the same on the books of Carter & Bliss, of which firm the defendant was a member. The complainant alleged that he was taken by surprise by this claim when made before the arbitrators, that he had never before heard it made, and the rent for that year had been treated as an adjusted matter, and that he was at the time unable to explain in reference to the existence of both his receipt and said charge on the books of Carter & Bliss; that it was late at night, and he was sick and without counsel, and was denied the inspection of the defendant's books and papers, and he again requested an adjournment, which was also denied him; that he did not at that time recollect that Harry Russ knew any thing about the matter; but that within thirty minutes after the arbitrators had retired, he recollected in reference to said rent, that it was actually paid in December at the time it was entered on Carter & Bliss' book, and was at the same time entered upon the lease by said Russ, and that he returned and informed the arbitrators that he could explain respecting it, but that they refused to hear. him explain further respecting it unless the defendant would consent, and that the defendant would not consent. The bill

alleged that the defendant had commenced an action upon the award, and prayed that the suit might be enjoined, and the award be vacated and annulled.

The defendant in his answer stated, that the complainant justly owed him over two hundred dollars; that he did not know what items in the account the arbitrators allowed or disallowed, but was confident that no mistake was made in his favor, and insisted that the award was conlcusive. The defendant's answer was traversed; and testimony taken, the nature and result of which are suffici-eiently stated in the opinion of the court. The court of chancery at their March Term, 1856, dismissed the complainant's bill, from which dismissal he appealed.

*T. P. Redfield and Merrill & Willard*, for the complainant.

Courts of equity will set aside an award for *gross mistake*; *Boston Water Power* v. *Gray*, 6 Met. 168. Receipt afterwards discovered *showing mistake*; *Ladd* v. *Barber*, 2 I. R. Ch. 551. For partiality or mistake of the arbitrators; 2 Story's Eq. 676; 914 *et seq.* Thoughnot amounting to corruption; *Lee* v. *Peteller*, 4 Leigh, 436. If arbitrators unreasonably refuse to adjourn to procure attendance of witnesses; *Forbes* v. *Tracy*, 2 Johns. Ca. 224. *Passamore* v. *Pettit*, 4 Dallas, 271; Cald. on Ar. 128, n. (1), 215, n. (1).

*Fraud of the party; Emerson* v. *Udall*, 13 Vt. 477; *Herrick* v. *Vt. C. R. et als.*, 27 Vt.; *Underhill* v. *Van Cortland*, 2 J. C. 339. Chancellor Kent admits that " partiality or misconduct of arbitra-tors or fraud of the party would avoid the award." Lord Hard-wick says, (Cald. 162,) " if arbitrators acted ' clandestinely ' without hearing each party, or the party by *fraud mislead* the arbitrators." " If undue means be taken to procure the award ;" *Lord Denman, Plems* v. *Middleton*, (51 Com. L. 850.) " If injustice is brought upon a party by *fraud* or accident, or the act of *opposite party ;*" Ch. KENT *Duncan* v. *Lyon*, 3 J. C. 551; see Ld. Ch. TALBUT, Cald. on Ar. 171; *Alderson* v. *Dancy*, 18 Vesey 444; *Lankton* v. *Scott*, Kirby 356; " In clear mistake of law or fact," 2 Story's Eq. 679; *Knox* v. *Symonds*, 1 Ves., jr. 368; *Rogers* v. *Dellemede*, 6 Term 111. " Willful concealment," Cald. 169, 170.

*Peck & Colby* and *J. A. Wing*, for the defendant.

As to the conclusiveness of awards and cases in which courts of equity decline to set them aside. REDFIELD J. in *Emerson* v. *Udall*, 13 Vt. 477 ; *Vandermaker et al.* v. *Vt. Central R. Company*, 27 Vt. 130 ; *Herrick* v. *Belknap's estate*, 27 Vt. 673 ; *Warner* v. *Conant*, 24 Vt. 351 ; *Leavit* v. *Cearnes*, 5 Cush. 129 ; *Vanderbilt* v. *Van Cortland*, 2 Johns. Ch. 367 ; *Burton* v. *Willy*, 26 Vt. 430.

The opinion of the court was delivered at the circuit session in May, 1857, by

REDFIELD, CH. J.   We are asked to set aside the award in this case upon two grounds, the misconduct of the arbitrators and the fraud of the defendant.

I. In regard to the misconduct of the arbitrators, we are not satisfied that it was intentional, or so gross as to justify a court of equity in setting aside the award.   The transactions at the trial were sufficiently discreditable to any attempt at judicial administration, even an arbitration.   But these things are so little under the control of an ordinary neighborhood arbitration that we should be very liable to do great injustice in supposing that any of the arbitrators really intended to countenance the misconduct which, on the most favorable construction, certainly did occur there.   We need therefore say no more upon this point.

II. In regard to the fraud of the party, we would have been glad to come to the same favorable result, but it is admitted that fifty dollars was allowed twice by the arbitrators, and we do not see how any one could question it.   This fifty dollars was paid for the rent upon the store on the 8th of December by a credit on Carter & Bliss' books, for the rent from the 10th of February to the 10th of August, 1857.   And the same fifty dollars was endorsed upon the lease.   These entries are described by Russ, that on the lease being made by him, and that on the book either made by him or in his presence.   There is no ground whatever to question the fact of there being but one payment made, and there is no reasonable doubt in our minds that a comparison of the entries would have shown at the arbitration (if Cutting had been allowed, as he should have been, free inspection of the books and papers) that the two entries were for the same thing.   But the

lease and the books were studiously kept away from Cutting, and they are as studiously kept out of the case now. This satisfies us that if produced they would make the identity of these charges obvious, and that there is no reasonable ground of explaining this wonderful circumspection in regard to the free production of those books and papers, but the consciousness in Carter that such is the necessary inference from a critical inspection of the books and papers. And we can only conclude that the defendant believed, at the time he presented and was allowed the fifty dollars at both dates, that it was but one payment, and that if Cutting had the free inspection of the papers he would discover their identity, or else that the entries were made by Russ, and thus get the clue to showing their identity by Russ, but that he expected by keeping the books and papers away from Cutting and only submitting them to the arbitrators this would not be discovered. This was presenting a claim which the defendant believed to be fictitious, and upon a *factitious* state of the evidence within the rule laid down by this court in *Emerson* v. *Udall*, 13 Vt. 477. Indeed all the cases seem to justify setting aside an award upon this ground, and many of them for reasons less specifically fraudulent.

We have critically reviewed the case since the argument. The defendant obtained this double allowance before the arbitrators upon the shallow device that he paid the rent when due, August 10, 1851, and then so completely forgot it in four months that he paid it again December 8, 1851, when the facts were that he made no payment of that rent till December 8; and it was entered on the lease by Russ, and the entry signed by the orator as a payment of rent due August 10, and it appeared that it was paid when due from the date.

We think, too, that it is impossible to explain the conduct of the defendant in regard to the charge for four barrels of flour in March in connection with the evidence, without adopting the view that the entries in the flour book of the defendant were altered as to their dates, so as to meet the testimony of Tracy; and that the plaintiff was in that manner deprived of the allowance of four barrels of flour, which he was justly entitled to be allowed, and would have been allowed but for this fabrication of testimony on the part of the defendant.

Cutting *v.* Carter.

This is not absolutely certain, except from the inferences which every inquiring mind must necessarily make against a party who studiously keeps his book out of sight when there is an allegation of the alteration of dates, and proof tending to such a result. If the books would refute such a charge, one would be quite beyond the common grade of simplicity to keep them so close, and counsel who should advise such a course, or who suffered it to be done by the party, must be supposed to do it understandingly, and to be aware of the penalty under which it is done, *i. e.*, that the presumption will be against them. We think, therefore, that the decree of the chancellor must be reversed and the case remanded to the court of chancery with directions to pass a decree for the orator, according to the prayer of the bill.

Smith, one of the arbitrators, testifies in this case that he is now satisfied that the four barrels of flour should have been allowed by the arbitrators, but were not; and he thought and said at the arbitration that Cutting should have the inspection of the books, that a party might discover what the arbitrators would not, which is certainly very sensible.

The defendant's own witness, Gould, testifies to seeing the flour book in the defendant's possession between the time of giving his two depositions, and still to his refusal to produce it on the examination of witnesses.

Paige testifies that the defendant declined to produce the lease at the taking of testimony, and it was not produced on the hearing, or the books.

The arbitrators testify that the fifty dollars was allowed as of both dates, and there is no pretense of a double payment; and Russ testifies expressly, that both entries were made for one payment, and if the orator could have seen the entries, there is no manner of doubt he would have explained it at the time. So that in every respect a re-examination of the case confirms the opinion written at the hearing as the unanimous impression of the court from the testimony and argument.