MERRILL A. FURBUSH *et al. vs.* JOHN H. COLLINGWOOD, Sheriff, *et als.*

A court of equity has no greater power to revise the judgment of a court of law in the matter of costs than it has in the matter of debt.

Hence, when a bill in equity was filed to review a taxation of costs, there being no proper allegation of accident nor of error, the bill not showing that the reasons against the taxation were not considered by the court of law, nor of fraud, the fraud alleged being that the costs allowed were fictitious and exorbitant; on demurrer to the bill:

*Held*, that the bill could not be sustained.

To enable a court of equity to give relief against a judgment at law on the ground of fraud, the fraud must be more than a mere falsity of claim or proof. It must be, outside of claim or proof, some artifice or collusion on the part of the person benefited, whereby the court of law was deceived.

BILL IN EQUITY for an injunction. On demurrer to the bill.

*July* 12, 1882. DURFEE, C. J. This is a suit in equity by a judgment creditor for injunction and relief. The bill sets forth that on March 3, 1881, the defendant, George Crompton, commenced an action in the Supreme Court against the American Mills Company, a corporation created under the laws of New York and doing business in Kent County in this State, in which action he attached the property of said company in said county, and afterwards, on May 2, 1881, recovered judgment therein for $3,047.19, debt, and costs assessed at $3,466.25 ; that subsequently fifty-seven Justice Court actions were commenced against said company for sums varying from twelve to one hundred dollars, in which attachments on the same property were made and judgments recovered, the aggregate of debt being $2,878.37, and of costs $2,228.75; that eight other attachments were made on the same property in ac-

tions commenced in the Court of Common Pleas and the Supreme Court, for debts amounting in the gross to about $14,068.45, with costs charged at $3,867, in which judgments were recovered; and finally that the complainants commenced an action against said company in the Supreme Court, in which they attached said property, after the attachments aforesaid, their claim amounting to $23,580, on which they have recovered judgment. The bill also alleges that the property attached has been sold on execution for $38,500, and that if the full amount of the judgments, debt, and costs, which have priority, are paid, the residue will not suffice to satisfy the judgment of the complainants. The bill does not attack any of the judgments in the matter of debt, but alleges error, resulting from over-charges and false charges, in the matter of costs. In regard to the costs assessed in the action of George Crompton, it alleges the commission of fraud, so called, in this : namely, that the defendant Shippee, the officer who made service of the writ, was allowed $68 for keeper's fees for seventeen days, and that for the same seventeen days he has been paid at the rate of two dollars a day for attendance on the Supreme Court and Court of Common Pleas; that he was allowed for services as keeper for two or three weeks when he was confined at home by sickness; that men were employed as keepers at four dollars a day when they might have been employed for less, and that they are to be paid less, Shippee having agreed with them that he should have part of their pay for himself; that more men were employed than was necessary, and that, while acting as keepers, they were also engaged in making copies of writs in the Justice Court actions. In regard to costs in the Justice Court actions, the bill alleges that Shippee, who served the writs, charged for three services, though there was but one defendant, in each case; that he charged eight dollars in each case for the inventory, though the work of taking it, once done, did not need to be repeated; that he charged $1.65 for a copy of the inventory in each case, and fifty cents each for copies of writs, which copies were made by the keepers. The bill does not allege that these charges were allowed in the assessments of costs. The bill does not allege any fault in the assessments of costs in the eight other actions mentioned. The bill alleges that Shippee has a charge of $917.15 for

fees after his term of office had expired, which charge has been disallowed by this court, but which said Shippee has attached to an execution in one of said Justice Court actions; and that one Colvin Hopkins, who had for a short time acted as deputy sheriff, has a bill of $106.00 which ought not to be charged or attached to any judgment. The plaintiffs in the actions aforesaid and the present sheriff, who has the proceeds of the execution sale, are made parties defendant. The bill prays that the sheriff may be enjoined from paying said fees and charges, and that a rehearing on the question of costs may be had in the Crompton case, and for general relief. The bill is demurred to for multifariousness, want of equity, and because there is an adequate remedy at law.

We do not find any ground on which the suit can be sustained. A court of equity has no more jurisdiction to revise and correct the judgments of a court of law in the matter of costs than in the matter of debt or damages, and in either matter it has jurisdiction only in case of fraud, accident, or mistake, or something of that nature. The bill contains no allegation of mistake. In regard to the assessment of the costs in the Crompton case, the bill contains allegations which in terms purport to be allegations of fraud, but which, when critically examined, turn out not to be such in reality. They are simply allegations that claims or charges were allowed which ought not to have been allowed, because they were either unfounded, fictitious, or exorbitant. A judgment cannot be impeached in equity simply for these reasons. To determine whether claims when preferred are true or false, reasonable or exorbitant, is the very function which the court at law has to perform. To hold, therefore, that a judgment at law is reviewable in equity simply because founded on false or exaggerated claims, would be virtually to hold that it is the right of the losing party, in almost any action tried on an issue of fact, to have it retried in equity, and would make the doctrine of *res adjudicata* comparatively nugatory. We apprehend that what is meant by fraud, as a ground for enjoining or setting aside a judgment, is not mere falsity of claim or proof, but fraud outside of them, perpetrated by some artifice or contrivance of the party or person benefited, or by some collusion of both parties, whereby in the course of the trial, or in

entering judgment, the injured party or the court has been imposed upon or betrayed into inattention and deceived. Freeman on Judgments, §§ 487, 489. High on Injunctions, §§ 86, 96, 97, and notes; *Muscatine* v. *Railroad Company*, 1 Dillon C. C. 536; *Bateman* v. *Willoe*, 1 Sch. & Lef. 201, 204; *Emerson* v. *Udall* 13 Vt. 477. No such fraud is alleged here. It appears by the bill that the costs in the Crompton case were actually revised and allowed by a justice of this court. It is not even alleged that the very grounds on which the bill attacks the allowance were not disclosed and duly considered, and certainly without the allegation it cannot be presumed that they were not. Some of the grounds must necessarily have been considered. The bill alleges that some of the facts were not known to the complainants till the bill was filed. In some circumstances this might amount to an allegation of accident. But here no such circumstances are averred. It may be that the complainants did not know of them because they had taken no pains to inform themselves; and it does not follow that the justice who allowed the costs did not know of them because they were ignorant.

In the matter of the costs in the Justice Court actions, it is not alleged that the charges complained of were allowed in the assessments. But if they were allowed, as the complainants probably mean to have us infer, it is not alleged, and it cannot be presumed without allegation, that the court did not duly discharge its duty by inquiring into all the facts, and allow the charges with full knowledge of the nature of them. It may be that the court, if it did so, erred sadly in matter of law or matter of judicial discretion; but, if so, it is not the province of this court, sitting in equity, to correct the error in the absence of fraud, accident, or mistake, and neither fraud, accident, nor mistake is alleged in regard to the Justice Court costs, even in general terms. Freeman on Judgments, § 487; High on Injunctions, § 130.

We also think that the allegation of unlawful charges by Shippee and Hopkins affords no ground for equitable relief. The charges according to the bill have never been allowed, and one of them has been disallowed; and therefore the sheriff, if he pays them, will pay them at his own risk, and if he pays them unlawfully will have to refund what he pays out of his own pocket. The

bill alleges nothing from which it may be inferred that for such a breach of official duty the law does not afford a perfectly adequate remedy.

It may be that the doctrine announced in this opinion will seem harsh and illiberal when applied to persons who are not parties to the judgments complained of, but are collaterally affected by them, because such persons cannot have the opportunity which the parties have to oppose unreasonable or unlawful claims and charges. We do not find, however, that such persons are treated more considerately than parties, except where there has been collusion between the parties, but rather the reverse. High on Injunctions, § 89; *Jordan* v. *Williams*, 3 Rand. 501. Equity as well as law favors finality in legal proceedings.

The bill does not make any stronger case for a new trial than for an injunction. To grant a new trial, for anything the bill shows, might result simply in having the court retry what they have once fully tried. See *Buntain* v. *Blackburn, Adm'r*, 27 Ill. 406. For, to illustrate in a matter set out by the complainant as a flagrant abuse, the justice who allowed the costs in the Crompton case may have deliberately adjudicated that Shippee was entitled to pay as keeper while he was drawing pay for attending court and while he was sick at home, for he was the superintending mind, the property was large, the circumstances, of which nothing is alleged, may have been exceptional, and his attention and solicitude unremitting.　　　　　　　*Demurrer sustained.*

*Dexter B. Potter*, for complainants.

*James Tillinghast, Walter B. Vincent & Samuel W. K. Allen*, for different respondents.