GEORGE A. BACHELDER, in equity,

*vs.*

WILLIAM M. BEAN and another.

Penobscot.   Opinion August 1, 1884.

*Equity.   Injunction.   Judgment.*

A court of equity will not enjoin the enforcement of a judgment except upon some distinct equitable ground which neither was nor could have been set up as a defence to the action at law.

ON REPORT.

General demurrer to bill in equity, submitted for the decision of the law court by the justice presiding at the April term, 1883. Either party had permission to refer to the printed copy of the case between the same parties, at law, in which the same matter was involved.

(Bill.)

. . . "And now said Bachelder gives this honorable court to be informed that some time previous to the year A. D. 1859, John B. Hill and others as proprietors, owned a large tract of land in Greenfield, in said county, embracing particularly lots number

four and five, in the third range of lots in said town; that previous to that time, one Joseph LeBallister entered into possession and occupied said lot number four, and continued to occupy and improve it for several years, until the summer of the year 1859, when William T. Garland purchased his said possession and improvements consisting of certain clearings of land and certain buildings erected thereon, and entered into possession thereof under and in recognition of the title of the true owners, the said Hill and others. In order to purchase the said LeBallister's said improvements and possession, which said LeBallister had made under an agreement to purchase the fee of said Hill and others, it became necessary for said Garland to borrow the sum of one hundred dollars wherewith to pay for the same. In order to effect such a loan, he applied to one Samuel Pratt, then of said Oldtown, and since deceased, which loan said Pratt then made to him. And at the same time, said Garland requested said Pratt to purchase for him, the said Garland, the proprietor's title to the lot so occupied by him, being said lot number four. And thereupon for the purpose of accommodating said Garland, according to his such request, said Pratt did consent to make such purchase, and accordingly on the seventh day of July, A. D. 1860, did make such purchase for his said Garland's special benefit. And on that day after agreeing upon the terms of the sale and purchase, a deed was made by said proprietors to said Pratt for the purpose of conveying said lot number four to him according to the wish and understanding between said Pratt and Garland on the one side, and said proprietors on the other, all of whom bargained for the lot then occupied by said Garland, and on which the buildings were erected as aforesaid. But so it happened by accident and without design on the part of any one in making said deed, the word, descriptive of the lot and its number, was made to read 'five' instead of four, so that according to the literal and legal meaning of the deed, lot number five was conveyed instead of number four, said lot number five being a wild lot and of little relative value, and said lot number four being the lot on which all said improvements had been made and possession thereof had, so that there was an

unquestionable mistake made by inserting the word 'five' instead of 'four' in the deed expressive of the number of the lot intended to be conveyed.

"And thereupon said Pratt having purchased the lot as aforesaid, and having taken the deed as aforesaid, and all parties supposing the lot number 'four' was the land actually conveyed, said Pratt permitted said Garland to remain in possession thereof as the same was purchased at his request and for his benefit, until the cash payment was made therefor, when said Pratt conveyed the same premises to said Garland, by deed bearing date May 28, 1863, on which day it was executed and delivered to said Garland. And the said Garland at the same time reconveyed the same land to said Pratt in mortgage to secure the balance of the consideration money, for which three notes were given amounting to three hundred and eight dollars, which notes were described in and secured by said mortgage, and the same are still due and unpaid, except to a small amount, and said mortgage undischarged. The said deed from said proprietors to said Pratt containing the following words as part of the description, viz: 'This deed being intended to convey the soil of said lot, but not to convey the improvements made by Joseph LeBallister on the same;" and the said deed from said Pratt to said Garland containing the following clause, viz: 'Being same conveyed to me by John B. Hill *et als*. July 7, 1860," and said mortgage containing the following clause: 'Being the same land this day conveyed by said Pratt to said Garland.' No improvements having been made on said lot 'five.'

"And thereupon the deeds having been made as aforesaid by intention of all parties thereto, for the purpose of making good the title of said lot number four on which said Garland resided, the said Garland was permitted to reside thereon and cultivate and improve the same, occasionally paying small sums on said notes until after the death of said Pratt, he never having ascertained the mistake.

"And the plaintiff further alleges that said Pratt died in September, A. D. 1863, being still ignorant of the mistake in said deed, but still supposing the lot to have been conveyed

which was intended. And after the death of said Pratt as aforesaid, said mortgage continued in the family as a part of the assets of his estate, and the plaintiff being the husband of one of the only two heirs of said Pratt, in behalf his wife and for his own interest as connected with the estate, he came to hold in the distribution of the assets of said estate two-thirds of the whole mortgage and notes secured thereby, and his wife and heir of her father the other third.

" And on the other side the remaining interest of the proprietors, especially so far as the two lots in question are included, came into the ownership of S. and J. Adams, to whom a deed was made by the then owners on the first day of March, A. D. 1881, of all interest in said lots.

" And the plaintiff further alleges, that for a long time the said mistake was unknown to any one, until some two years after the death of said Pratt, when the former owner of a part of the premises, in about the year 1865, ascertained the mistake and gave all parties notice thereof, but inasmuch as said Garland manifested no disposition to take any advantage of the mistake, but on the contrary made occasional payments on the notes the matter was permitted to remain quietly as it was. And so it remained until the year 1880, when, to his surprise, plaintiff found out and ascertained that said Garland had conveyed the lot on which he had in the mean time resided from the time of his purchase of the improvements in 1859 as aforesaid, to the time of said deed, to this defendant, William M. Bean, the deed bearing date November 15, 1880, and that said Bean had entered and taken possession of the premises, the deed reciting the fact in substance that said Garland claimed title by twenty years adverse possession and disseizin.

" That thereupon by deeds bearing date March 11, 1881, the said Bachelder and wife as successors to said Pratt in the title on the one part, and said S. and J. Adams as owners of lot number four and other lots on the other part, in order to correct said mistake and make each other's title what in equity it was intended to be and equitably was, made each to the other reciprocal deeds of the lots in question, said Adams' conveying all their interest

in lot number four to said Bachelder, and said Bachelder and wife conveying to said Adams' all their interest in said lot number five. And the said Bachelder being thus the legal holder of the title at once entered into possession of the premises, and was in peaceable possession thereof, when the said Bean commenced an action of ejectment or writ of entry for the same, claiming the title and ownership by virtue of a disseizin and prescription for more than twenty years, and the said Bachelder as defendant setting up in defense against the same, the fact, in denial, that no such title had been acquired by such possession, the same not being adverse and of a nature such as gave title. But notwithstanding the said defense the court have, viz : on the fourteenth day of December now present, rendered judgment for plaintiff in said suit, and execution has issued to put him in possession of said premises, and the plaintiff is about to serve said process and put your complainant out of possession and seize the hay cut on said premises and now on storage in the barn on said premises." . . .

The bill prayed for an injunction and that defendant be required to release the premises to the plaintiff.

*A. W. Paine*, for the plaintiff, argued :

That the injunction prayed for, under the circumstances of this case, should be granted. I cite from a great number of cases at hand, the two following from our own reports, viz : *Burr* v. *Hutchinson*, 61 Maine, 514 ; *Hinckley* v. *Haines*, 69 Maine, 76, and cases *passim*.

That the injunction may be decree against the judgment and execution, as well as before suit, the authorities are beyond number. I cite simply our own reports. *Devoll* v. *Scale*, 49 Maine, 320.

In 7 Cranch, 336, the supreme court of the United States say an injunction lies against a judgment " when the defence was one which the party could not avail himself of at law."

That is just our case, the court having decided in this that the defence could not be thus availed of.

This whole case is so fully supported by the very able discussion on this subject of injunctions by Mr. Kerr, that I feel that noth-

.ing more need be added. See Kerr, Injunctions, * 587 to * 596; 46 Conn. 65.

*Davis and Bailey*, for the defendants, cited: *St. Johnsbury* v. *Bagley*, 48 Vt. 75; *Fletcher* v. *Warren*, 18 Vt. 48.

WALTON, J. This is a bill in equity, the prayer of which is that the defendants may be enjoined from the enforcement of a judgment. The case is before the court on demurrer to the bill.

We think the demurrer must be sustained. The judgment which we are asked to enjoin was recovered in a real action. The issue tried was whether the plaintiff's grantor had obtained a title to the demanded premises by disseizin. It was urged in defense that the possession had not been adverse, and so did not ripen into a title. The evidence was reported to the law court and the case there decided. The judgment was in favor of the plaintiff. ( See *Bean* v. *Bachelder*, 74 Maine, 202. ) The defendant in that suit now seeks to enjoin the enforcement of the judgment on precisely the same ground on which he sought to prevent its recovery. This the law will not allow him to do. A court of equity never enjoins a judgment except upon some distinct equitable ground which neither was nor could have been set up as a defense to the action at law. An issue once tried in a court of law is never retried by a court of equity. The parties have had their day in court, and they must abide by the result.

The rule was correctly stated by Chief Justice MARSHALL in *Marine Insurance Company* v. *Hodgson*, 7 Cranch, 332. It is that any fact which clearly shows it to be against conscience to execute a judgment at law, and of which the complainant could not have availed himself at law, or which he was prevented from availing himself of by fraud or accident, unmixed with any fraud or negligence of himself, or his agent, is ground for enjoining the judgment; but a legal defense, actually made at law, is not ground for enjoining the judgment, though the court may think it ought to have prevailed.

"It is now, I apprehend, well settled," said REDFIELD, J., in *Emerson* v. *Udall* 13 Vt. 477, "that a court of equity will not examine into the foundation of a judgment of a court of law,

upon any ground which either was tried, or might have been tried, in the court of law. The judgment of a court of law is conclusive upon all the world as to all matters within its cognizance. If a party fail by not presenting his defense, when he should have done it, he can have no redress in a court of equity. Much less can he expect relief in a court of equity, when he has had a full trial at law upon the very grounds which he now wishes to urge anew."

To the same effect is 2 Story's Equity, § 894, and High on Injunctions, § 96.

The judgment which we are now asked to enjoin was obtained after a trial of the action upon its merits. It was not a judgment obtained upon a default. It was not a judgment obtained upon any narrow or technical grounds. It was a judgment obtained after a full and careful trial, in which the defendant was aided by the same able and learned counsel who now aids him in the prosecution of this suit for an injunction; and it will not be denied that the same facts were relied upon in the defence of that suit which are now relied upon in the prosecution of this; and if these facts were sufficient to justify enjoining the judgment which was recovered in that suit, they would have been sufficient to prevent its recovery. It was there held, as the published opinion of the court shows, that the plaintiff's grantor had obtained a perfect title to the land by disseizin; and, further, that if the then defendant, now plaintiff, ever had any equitable title to the land, he had parted with it, and taken in lieu thereof, the title of those who had been disseized, and thereby lost their title; and, consequently, that he had neither a legal nor an equitable title.

We can not now discuss the correctness of the decision in that action; not because we have any doubt of its correctness; but because we deem it improper to do so. The parties have had their day in court. They have been heard, and their several titles to the land in controversy adjudicated; and it would be a bad precedent if the court should now consent, when sitting as a court of equity, to discuss the merits of a judgment rendered by them when sitting as a court of law. It is sufficient to say that we deem the title to the land in controversy *res adjudicata*, and

that the facts stated in the bill are not sufficient to require or justify a court of equity in interfering with it.

*Bill dismissed with costs.*

PETERS, C. J., DANFORTH, LIBBEY and EMERY, JJ., concurred.